# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | |
|---|---|
| **QUINDELE ADDISON** | **CIVIL ACTION NO. 5:13-cv-0782** |
| **LA. DOC#367461** | |
| | **SECTION P** |
| **VS.** | **JUDGE TOM STAGG** |
| **JERRY GOODWIN, ET AL.** | **MAGISTRATE JUDGE MARK L. HORNSBY** |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Quindele Addison, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on April 12, 2013. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. He has been confined to the Extended Lockdown cell block at the David Wade Corrections Center since September 30, 2009 and complains that his rights to Due Process and freedom from cruel and unusual punishment are violated by the Corrections Officials who deny him the opportunity "to hear and be heard" at the classification review hearings convened every 90 days. He prays for declaratory judgment, compensatory and punitive damages, release from Extended Lockdown and a transfer to another prison.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §§636, 1915, and 1915A. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

### *Statement of the Case*

On September 30, 2009 plaintiff was convicted of a disciplinary rules violation and sentenced to Extended Lockdown. In accordance with applicable regulations, the Review Board

reviews his placement every 90 days. Notwithstanding his repeated requests, plaintiff is denied the opportunity to "hear and be heard" in person at the review hearings.

On August 13, 2012 he filed a formal grievance wherein he complained that he was denied the right to be present at the July 26, 2012 hearing as well as the 12 preceding hearings convened since his confinement. [Doc. 1-1, p. 24] His grievance was assigned Case Number DWCC-2012-1002 and on September 12, 2012 his DWCC Unit Head responded:

> In your ARP, you claim that offenders must be brought before the Review Board at least every 90 days. According to policy, offenders in 'DD Extended Lockdown will receive a personal interview to determine eligibility and suitability for Working Cell Block status at least every 90 days, unless precluded for security or other substantial reasons, the offender will be allowed to appear at their hearing.'
>
> Due to the large size of the review boards, the volume of medical/mental health call outs and the fact that DD Extended Lockdown offenders must be escorted by two correctional officers, it is tasking on Security to have maximum custody offenders outside of their cells for call outs that can be handled in alternate methods. The Review Board comprised of classification and security staff comes to your cell and provides you with the decision regarding your release from DD Extended Lockdown. You are meeting the Review Board in this manner. You are also provided 48 hour notice of the Review Board through the DNB. You have ample opportunity to discuss these issues. Classification staff and Security staff also makes frequent rounds in the cell blocks and are available to discuss your eligibility/suitability for the WCB and any other concerns that you might have.
>
> Your were sanctioned to DD Extended Lockdown by the Disciplinary Board on September 30, 2009. You have been reviewed every 90 days since that time and denied reassignment to the WCB due to serious nature of the past offense and disciplinary reports received during confinement. You will be scheduled for review again within 90 days of the last review. [Doc. 1-1, p. 25]

Plaintiff appealed this decision to the DOC Headquarters and on November 15, 2012 the Secretary's designee noted, "As stated in the first step response, Due to the large size of the review boards, the volume of medical/mental health call outs and the fact that DD Extended Lockdown offenders must be escorted by two correctional officers, it is tasking on Security to have maximum

custody offenders outside of their cells for call outs that can be handled in alternate methods. Per policy 03-01-001, 'Unless precluded for security or other substantial reasons, the offender will be allowed to appear at their hearing.'" [Doc. 1-1, p. 26]

It appears that plaintiff's status has indeed been reviewed at 90 day intervals since his September 2009 placement in Extended Lockdown. [See Doc. 1-1, pp. 28-41]

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

*2. Rules Violation and Due Process*

The classification of prisoners is a matter left to the sound discretion of prison officials, who are granted broad administrative and discretionary authority over the institutions they manage and the lawfully incarcerated convicts under their control. *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir.1983). Generally, if an inmate's classification and housing assignment are reasonably related to legitimate security objectives and are not an exaggerated response to security considerations, there is no denial of due process. *McCord v. Maggio*, 910 F.2d 1248 (5th Cir.1990).

As plaintiff has acknowledged, the reason for his classification and assignment to Extended Lockdown was his September 2009 conviction for violation of a prison disciplinary rule which he described as "a sex offense with female officer." [Doc. 1, p. 5] Based upon this disciplinary rule conviction, corrections professionals determined that his placement in Lockdown was appropriate. Thereafter, at 90 day intervals, corrections professionals have determined that his classification and assignment to Extended Lockdown remained appropriate because of the seriousness of past offenses and disciplinary reports received during confinement. [Doc. 1-1, pp. 28-40]

Plaintiff complains, not about his initial placement in Extended Lockdown, but instead about what he perceives to be a violation of a prison regulation concerning his presence at the periodic review hearings. In other words, plaintiff complains that the defendants have violated a prison rule or regulation. The rule in question, Rule V(A), clearly states "<u>Unless precluded for security or other substantial reasons</u>, the offender will be allowed to appear at their [Review Board] hearings." [Doc. 1-1, p. 10] As previously noted, plaintiff's administrative remedies grievance was denied when corrections officials invoked the exception to the rule having found that security reasons were sufficient to warrant his absence from the review hearing. In other words, plaintiff has not established that the rule in question was actually violated.

Further, it appears that plaintiff's absence from the actual hearing is of no moment. According to the response provided to his grievance, the Review Board staff routinely visits plaintiff in his cell and provides him with the decision regarding continued custody in Extended Lockdown. As noted by the response to his grievance, plaintiff is afforded "...ample opportunity to discuss these issues. Classification staff and Security staff also makes frequent rounds in the cell blocks and are available to discuss your eligibility/suitability for the WCB and any other concerns that you might

have." Clearly, and contrary to his assertions, plaintiff is afforded every opportunity to "hear and be heard" concerning his placement and classification.

Nevertheless, even if the defendants were in violation of the regulation by refusing plaintiff the opportunity to be present at his 90 day review, such a claim is not one of Constitutional proportions and plaintiff's complaint to the contrary simply fails to state a claim for which relief may be granted. *See Jackson v. Cain*, 864 F.2d 1235 (5th Cir.1989) ("A state's failure to follow its own procedural regulations does not establish a violation of due process...") In short, plaintiff has not shown a violation of the rule in question, and, even if he could, that violation of the prison regulation, standing alone, is insufficient to establish a violation of the Constitution or laws of the United States.

Finally, to the extent that the plaintiff contends that his constitutional right to due process has been violated by the failure of the defendants to allow him to be physically present at the 90 day review hearings, this claim is precluded by the rule set forth in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In *Sandin*, the United States Supreme Court noted that while in rare situations, an inmate may claim entitlement to procedural due process in connection with prison disciplinary proceedings, such entitlement comes into play only where the state action has exceeded the inmate's sentence in such an unexpected way as to give rise to the protection of the Due Process clause of the United States Constitution. *See, e.g., Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (transfer to a mental hospital); *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (involuntary administration of psychotropic drugs). In other words, under *Sandin* and progeny, it is only those restrictions which impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" that will invoke the

prospect of state-created liberty interests and scrutiny under the Due Process Clause. While *Sandin* made it clear that punishments which impact upon the <u>duration of confinement</u>, or which exceed the sentence in an unexpected manner, <u>or which impose "atypical and significant hardship[s]</u>", will give rise to the protection of the Due Process Clause, more routine disciplinary procedures or determinations will not invoke this Constitutional protection.

In other words, plaintiff has not demonstrated an atypical or significant hardship with regard to the conduct of the review hearings and his due process claim is clearly frivolous.

### *3. Cruel and Unusual Punishment*

Plaintiff also complains that the failure to allow him to be present at review hearings violates the Eighth Amendment. While the Eighth Amendment does not prohibit punishment it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Plaintiff fails to explain how the complained of actions of the defendants have subjected him to cruel and unusual punishment. In order to rise to the level of a constitutional violation, the complained of conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities...'" *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)). Thus, in order to prevail on such a claim, the plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *See Siglar v. Hightower*, 112 F.3 191, 193-94 (5th Cir.1997); *Alexander v. Tippah County, Miss*, 351 F.3d at 630-31; *Luong v. Halt*, 979 F.Supp. 481, 486 (N.D.Tex.1997). Plaintiff has alleged no harm or prejudice resulting from his absence from the review hearings and therefore his Eighth Amendment claim is frivolous.

*Recommendation*

Therefore

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2). Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See,** *Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996);** *superceded by statute on other grounds*, **28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).**

In Chambers, Shreveport, Louisiana on November 15, 2013.

Mark L. Hornsby
U.S. Magistrate Judge